We're ready for argument in our last case, United States v. Welsh, Ms. DeLauro. Good morning, and may it please the Court. Jackie DeLauro for William Welsh. For more than seven years, William Welsh has languished in a federal prison for conduct that was not a crime. Although his federal conviction since has been vacated, he remains there because the District Court refused to lift its civil commitment judgment. This Court can right that wrong under any of four theories. The simplest is Rule 60b-5's reversed or vacated clause, which provides relief where a judgment is based on a prior conviction or judgment that has since been vacated. That's exactly what we have here. We know that 18 U.S.C. 4248 authorizes civil commitment only of those individuals who are in the legal custody of the Bureau of Prisons. And as the District Court acknowledged at 106 and 107 of the Joint Appendix, that authority, quote, existed solely because of the District of Oregon's judgment of conviction of Mr. Welsh. We know, then, that the District Court necessarily considered that judgment in its civil commitment decision. Well, there are more parts to 60b-5 than just reversed or vacated. There are other bases for relief under Rule 60b-5. That's correct, Your Honor. One can also seek relief if the judgment has been satisfied, released, or discharged. But you're relying on 65b. And then if, and don't you also, isn't it also conjunctive that you have to meet b-6? Am I remembering that correctly? No, Your Honor. 60b-6 is a separate claim for relief. We raised claims under four theories for Mr. Welsh in the District Court. That was under Rule 60b-4, lack of subject matter jurisdiction, and thus the judgment is void. You're right. I miss reading my own notes. That's all right. Well, let me ask. So all of these are couched in terms of discretion of the District Court. It's not must relieve. It may relieve. And so there is inherent in that some discretion on the part of the court to consider the equities in the case and arrive at a just resolution of the matter. So what is inequitable about this result? First, briefly, Your Honor, Rule 60b-5 does not actually admit of any discretion for the District. Rule 60b-4, excuse me, does not admit of any discretion for the District Court. You were talking about 60b-5, which is what I'm focusing on right now. Okay, I apologize, Your Honor. With respect to Rule 60b-5, we believe that this court's en banc decision in Aikens v. Ingram suggests that there is no equitable consideration under 60b-5. But even if there is a requirement that Mr. Welsh show exceptional circumstances, we believe the circumstances are exceptional here. He has been in prison for more than seven years as a result of conduct that was not a crime. It was a crime, though, at the time of the civil commitment. That's not correct, Your Honor, because in Nichols v. United States, the Supreme Court told us what the statute, SORNA, always meant. And it said that SORNA never encompassed Mr. Welsh's conduct. In Rivers v. Roadway Express, the Supreme Court explained that when it decides a statute... But his judgment, but the judgment hadn't been vacated. That's correct. Yeah, that was all I meant. That is true. Because it's not a self-effectuating decision. It has to be acted on by the district court. Vacature is not necessarily required for relief under 60b-4. It is required under 60b-5 because that requires that the decision be based on a decision that has been reversed or vacated. And I thought you said that was the section under which you're proceeding. Yes, so the vacature had not happened at the time, but that is not required for relief under 60b-5. The district court, at the time of civil commitment, did not need to have been dealing with a conviction that had already been vacated. Doesn't the statute in this case, 42-48, talk in terms of custody? It does. Whether or not judgments are void or reversed or vacated. And wasn't he, in fact, in the legal custody of the Bureau of Prisons when this action was taken against him? And if so, isn't that the end of the story? He was not in the legal custody, Your Honor. How do you define legal custody? Legal custody is custody pursuant, if we're dealing with only the subsection under which we're dealing with for Mr. Welsh. It is only legal custody if he is there subject to a valid conviction. And we know because of Nichols v. United States that his conviction never was valid. It was not vacated until after Nichols was assigned. Okay, and so where do you find that definition of legal custody? In Joshua and in Savage. No, Joshua didn't deal with this. Joshua was never in the legal custody because of the unique circumstances of his case with the Bureau of Prisons acting as a contract custodian for the military. That's correct, Your Honor, and I know this is your decision. But I understand from Joshua that the question is whether in Joshua the court was addressing whether Joshua was in the legal custody of the Bureau of Prisons or of someone else. And in that case, this court decided that he was in fact in the legal custody of someone else. Right. Here we have a slightly different question. We have a completely different question. Because he's no other, he would not have been in anyone else's legal custody. That's correct. That's the reason that the analysis in Joshua doesn't help you here. It does, though, tell us that physical custody is not enough. We have more than that here. After the fact, it turns out that the conviction was improper. But the Bureau of Prisons took control and custody of this individual pursuant to what was then a valid judgment of a federal district court. No, Your Honor. Because of Rivers v. Roadway Express, the Supreme Court has explained that when it decides a statutory interpretation question, which it did in Nichols, it is telling all courts what the statute has always meant. Which means that at the time that Mr. Welsh pleaded guilty, at the time he was convicted, at the time he was certified, at the time he was committed, and today, his conviction was always void. But we would have to then apply the criminal decision that his conviction wasn't valid in the first place retroactively in order to nullify the BOP's legal custody at the time, right? No, Your Honor. Again, I would direct this court's attention to Rivers v. Roadway Express because it explains quite clearly that a statutory interpretation decision says what the statute always meant. But if... An action has to be taken to impact the individual. The district court had to consider whether to take the predicate action under 60B for vacature purposes. It's not a self-executing decision. That's only relevant as to 60B-5's reversed or vacated clause. And I would direct this court's attention to Warner v. Carbo, which is a decision from this court under 60B-5's reversed or vacated clause. And the question there was whether a professional corporation could receive relief from a money judgment. In that case, the conviction or the judgment had not been vacated at the time of the initial determination. That was sort of the point, that then later the plaintiff was able to go back to the district court and seek Rule 60B-5 relief. The issue, though, even for 64B purposes, seems to be whether the court that entered the judgment arguably had jurisdiction to do so at the time. That's true under 60B-4. Which is, I'm trying to follow you from section to section to keep up. So, we do know that to prevail on a motion staying with 60B-4, a movement has to establish more than just jurisdictional error. It's only when the jurisdictional error is egregious can courts treat the judgment as void. And it's egregious when there's no arguable basis on which the court could have rested a finding that it had jurisdiction. And that's just not true here. That is true here, Your Honor. Actually, well, I'm sorry, go ahead. Because we know from the Supreme Court's decision in Comstock, as well as this court's decisions in Joshua and Savage, that legal custody is at the very least a mandatory precondition for certification under 4248. And the district court need not have had any malice or have known that it was acting outside of its jurisdiction. You're not speaking to, we're looking for egregious jurisdictional error at the time. That's correct. And it was egregious, even though the district court did not know it yet. Nobody knew it yet. That's correct. And it can't be, because, I'm having trouble, I'm really having trouble absorbing this. Because your argument seems to be that the Supreme Court has no authority to decide. It very often decides that its opinions are not retroactive. They have no retroactive effect. So it cannot be that the minute they decide that a law, the Johnson line of cases, for example, is impermissibly vague. But they can also decide that it does or does not have retroactive effect. And under the analysis that you're presenting, that seems to be meaningless. No, Your Honor. With respect to entitlement to relief under habeas corpus or any of those lines of cases, that is absolutely correct. There is a separate inquiry into retroactivity. Here, no clause of 60B, other than the reverse or vacated clause, requires the actual vacature of a conviction. Can I ask you about the Rivers case? So in what context is that language that you just quoted as being used by the Supreme Court? What was the issue in that case? The Supreme Court was dealing with a civil rights statute and explaining that once it announces a statutory interpretation decision, it is saying what the law always meant. So it's not a change in the law. So what did that mean? I mean, was that actually an issue in that case, that there was some question about the retroactive application of the statute?  And the court said that there is no change in the law. What was the issue? I'm just having trouble remembering the issue. Maybe you can fill me in. The issue is, I would need to, I can respond on rebuttal. I'd need to take another look at the case. Okay, fair enough. I apologize. But I, so I do want to draw a distinction between 60B-5 and 60B-4 because I'm afraid that I've myself muddied the waters. No, I understood. I did understand the distinction. I wasn't quite always, I wasn't always following which section you were arguing under. And, and the court's case law is, is confusing on these questions. So, so 60B-5 has two clauses under which we've sought relief, the reversed or vacated clause and the no longer. No longer. And under B-5, the court found no exceptional circumstances. That's correct. We believe that that inquiry is not appropriate after Akins v. Ingram, but even if it is, this court has been clear, and in fact the Supreme Court in Horn v. Flores said that 60B-5 does not admit of an inquiry into relitigating the merits of the underlying judgment. And that's exactly what I believe the district court did in this case. The question is not whether Mr. Welsh was at the time or even is now sexually dangerous. The question is whether his interest in release from civil commitment when he was never convicted in a valid way is outweighed. When he was never convicted of the, there was no SORNA, there was no proper SORNA violation. That's correct. So his custody was. So you're not, you're not challenging the civil commitment determination. We are. I'm sorry, on its, on its merit, on its merit. Other than it's, you're challenging the predicate on which it rested. We are here today asking the court for relief from the civil commitment judgment. Because the predicate was void. And because the district court's decision civilly committing him was void. And as a result, Mr. Welsh is entitled to relief from those judgments. Now, with regard to an equitable determination, this court is looking not at the question of a money judgment as it was in Werner v. Carbo, but in fact we're talking about liberty, not money. And to the extent there's a community or a public interest that should be considered, I think the government and the district court are construing it too narrowly. Surely the public also has an interest in not committing and not convicting those who are actually innocent of the crimes. Well, does it have a public interest in protecting young men from sexual predation? Because that's, that appeared to be, that appeared to be weighing very heavily on the district court's mind, particularly in light of Mr. Welsh's indications of his incorrect ability or in the fact that he planned to continue those activities. Your Honor, my light is on. May I respond? It is, and I'm sorry to have taken up. If you could just answer that question and then you will have your full seven minutes, Your Honor. Thank you. I do think it is a valid consideration, but in this case... You just want us to weigh it differently, which has to be a, my point there is that it has to be a discretionary determination because you're weighing factors. You're weighing the interests of the detainee versus the interests of the public. That's correct, but we are not relitigating the underlying civil commitment judgment. And in Mr. Welsh's case, he has had no hands-on offenses for 18 years. Well, he's been in detention. Not for all of that time, Your Honor. He has had 18 years free of hands-on offenses. He's 63 years old. All of the actuarial instruments... Well, he's had 18 years of not being convicted of a hands-on offense. We don't know if he committed one or not. There's no allegations in the last 18 years against him. Oh, I grant you that, but he hasn't been convicted, basically. And part of the time he was out of the country, was he not? Part of the time he wasn't out of the country, but that was a short time, and there was no evidence presented that any hands-on offenses occurred during that time either. He also is 63 years old, and all the actuarial instruments suggest that after age 60, the risk of recidivism for sexual offenses goes down precipitously. I would also note that to the extent the Bureau of Prisons has not recommended his release, that is based on stale data because... Thank you very much. I think you're going beyond... Thank you, Your Honor. Thank you. Mr. Lockridge? Thank you. Good morning. My name is Michael Lockridge. I represent the United States. May it please the Court. At the time the government certified Mr. Welsh, he was in the BOP's legal custody pursuant to the federal criminal judgment out of the District of Oregon. That judgment remained in place years after the 4248 court civilly committed him as a sexually dangerous person based on him having engaged in multiple acts of sexual offending against children over a 20-year span based on a serious mental illness. I'm sorry, I'm losing... Could you speak a little closer to the mic? I'm losing the ends of your sentences. Michael, you're right. Thank you. Based on... Based on his civil commitment, the district court found that he was a sexually dangerous person based on his 20-year span of sexually offending against children and as a result of a serious mental illness. Mr. Lockridge, Mr. DeLauro spent a lot of time talking about the Rivers case and the fact that once the Supreme Court interprets the statute, it defines the meaning of the statute as it always was, meaning that in the very beginning, this was a void judgment and as a result, the civil commitment just simply is not proper. What's the government's response to that? Well, as the district court recognized, Judge Diaz, the district court was confined in this case to determining whether to grant relief under 60B4, 60B5, 60B6. Under 60B4, as Judge Duncan pointed out, relief is not available where the district court had at least an arguable basis for subject matter jurisdiction. So, the issue of whether the civil commitment court had subject matter jurisdiction really is immaterial to whether Mr. Welsh can get relief here. I'm not sure that exactly answers... Is that it? I did not understand that to be Judge Diaz's question. I'm asking for... Not the civil... Go ahead. The SORNA provision that made it a violation of the sexual offender registry to leave the country, the Supreme Court said it was not a violation of SORNA to not inform relieving the country. And that Ms. DeLauro's argument is that means it never was. Based on the Rivers case, that it never was. So, if it never was and there was no prerequisite to his civil commitment now for seven years, I'd like to go to Rule 60B5. How is that not an unequitable situation? How is it not an unequitable situation? How could equity be on the government's side here? Well, because the district court civilly committed him as a sexually dangerous person. Based on a crime that is not a crime, an offense that actually is not an offense. How long can the government keep somebody in custody, civilly committed, who has not now committed the underlying crime for which he was civilly committed? Well, again, he was determined by the civil commitment court to be sexually dangerous. Your point goes back to the BOP's legal custody. So, the question is... My point goes back to the government's interest in seeing that justice is done in a case. I don't understand how justice could be done in just holding on to somebody who the courts have said did not commit the requisite crime in the first place. Well, under B5, the district court's decision is reviewed for an abuse of discretion. And I was going to ask you that. What's the standard of review? Under B5 and B6, it's clearly abuse of discretion. Under B4, there's case law both ways. One being that it's reviewed for clear error as well. Would it matter... And I'm sorry, I don't... Has... Is it in the record whether Mr. Welsh has ever sought a hearing on release from... From the civil commitment, Your Honor? From the civil commitment? I'm just asking for information. Is that in the record? That's not in the record, Your Honor. He actually stipulated subject matter jurisdiction during the civil commitment hearing. And on appeal, he agreed that the district court had... He agreed that the district court had subject matter jurisdiction. Well, how about this? Let's look at... Let's go back to the abuse under B5, which is abuse of discretion, and tell me how... And I think this is part of Judge Thacker's question. How the equities weigh in favor of detention when you factor in that this... The offense of conviction, not the commitment hearing, but the offense of conviction, is no longer a crime. Regardless of whether it was valid to start with. Just stay with me on that. Narrow focus. Sure. Well, one of the considerations the district court makes in determining whether to grant relief under B5 is whether significant change in factual conditions or the law may continue to enforcement of the civil commitment judgment detrimental to the public interest. Yeah. Okay. Yes. And the court considered the public interest as well as Mr. Welsh's significant interest in release from his civil commitment. The facts... The facts are... The undisputed facts are that he's engaged in serious sexual offenses against children as a result of a serious mental illness. His sexual behaviors and conduct has been poor since the civil commitment judgment. He's engaged in inappropriate sexual acts while in prison. He's failed treatment and he's progressed poorly in treatment. Do you know if he were to be released, would he still be under any supervision for any of his prior crimes and or on the sexual offense registry? Surely he'd be on the registry. He would be subject to SORNA, Your Honor, is my understanding. He's not under any other supervised release or federal or state supervised release based on the record, Your Honor. Okay. Because his criminal judgment was vacated, therefore that supervised release, which was for a life term, incidentally, that obviously goes away as well. And the state parole violation when he fled to Belize from Oregon, that has been completed, is my understanding. So if I'm understanding your argument correctly, essentially if the government shows that there's a continued risk of potential harm to society, in other words, that this individual remains a sexually dangerous person, that's the end of the inquiry in a case on these facts. Well, it depends on which prong of 6 to B we're looking at, Judge Diaz, but in essence, yes, because, and again, it is important that we consider. How does it depend which prong makes a difference? Well, B4 is looking at... You're past that. We're now on B5, right. We're on B5, and B6 doesn't even apply because... A catch-all, right? Well, it's a catch-all, but B6 doesn't apply if any other enumerated premise for relief is being argued by Welsh. And his premise for relief is that under B5, that the underlying criminal judgment was vacated. So B6, as a matter of law, is not available to Mr. Welsh here. So the answer to my question is, if he remains a sexually dangerous person, it doesn't matter that his conviction was void or vacated. Or vacated, sorry. The government can keep him forever. Well, the government... Even though if he was released, there's... Because his conviction was vacated, every other, you know, he wouldn't be on supervision. I mean, he would have to register as a sexually... Well, again, he's already received his relief under the criminal judgment. That's done. So the criminal relief... But he's still in detention. Sure. It probably doesn't look very different to him. Well, not to him. Well, yes, the difference is that he could apply for a release. He could apply. Every six months after the civil commitment, he has the availability to apply for relief under 42.7. Right. Who has the burden in those hearings? Do you know? Yes, Your Honor. The movement? The movement has the burden to show that they should be released. Yes, Your Honor. Well, I was noticing... And I will ask Mr. Lahr about this as well, that based on his conduct during civil commitment, the district court found that he would have serious difficulty in refraining from sexually violent conduct or child molestation based on record evidence that he frequently engaged in inappropriate sexual conduct during his civil commitment at Butner. A statement he made in 2015 that he was a Satanist and would follow satanic commands to commit sexual crimes and a psychological report completed as a part of the treatment he received, which concluded that he made virtually no advancement in his treatment. That's correct, Your Honor, and that goes to the public's interest in determining whether he should be granted relief under 60b-5. And the court recognized his interest, the public's interest. The court also recognized the judiciary's interest in finality of the district court's civil commitment order. As this court recognized, Mr. Welsh does have the opportunity to seek relief in the future, but the purpose of the Adam Walsh Act, Congress' purpose in enacting the Adam Walsh Act, is to keep those in federal custody, that the federal government, as a custodian, has a responsibility to ensure that their release would not impact, in a dangerous way, society and to protect society from those types of dangerous persons. May I ask you about the 4248 section G, which Ms. DeLauro, in her brief, sort of talked about very briefly and the government seemed to be concerned about whether or not she was making a claim under that section for immediate release. You don't read that provision as requiring the government to release an individual under the circumstances present here, do you? Absolutely not. We do not read it that way, Your Honor. We didn't make the argument here because it wasn't presented before the district court and she didn't make an argument for relief under there. However, if it was made an argument, we would contend that 4248 G does not apply. Why doesn't it apply? Because we would contend 4248 G, the language of that statute applies pre-commitment. If he's determined to no longer be mentally ill pre-commitment, then the Attorney General, Director of Bureau of Prisons would release him to the state if the state's unwilling to take him, whether or not the state's unwilling to take him. So this is a post-commitment situation. Okay. If the court wanted me to move on to B4 and B6, we can. But going back to B4, Judge Duncan mentioned the phrase that all the lower court here required to avoid granting Mr. Welsh relief was that there be an arguable basis for the court subject matter jurisdiction. So at the time... You're back to B4. Yes. Okay. Just want to briefly summarize that. B4, at that time, the district court had an arguable basis. That's all that was required. Therefore, Mr. Welsh's claim under B4 is precluded. And briefly summarizing B6, again, as I mentioned, B6 is not available if the motion for relief is premised on grounds for relief enumerated in B1 through B5. Here, Ms. DeLauro focused her argument on B5, which is their grounds for relief. So really we're cabining into B5. And if there's any relief available, it would be under B5 to the exclusion of any other. I want to get back to Judge Thacker's question. And what troubles me as well is, you know, this whole notion of holding somebody beyond the expiration of their criminal judgment just runs... It's just inconsistent, it seems, with general notions of due process and general decency in our society. And I recognize that the Supreme Court has spoken about this statute. But given the unusual facts present in this case, shouldn't, in a case of any question or doubt, shouldn't that doubt endure in favor of the defendant in this case? Not in this case. Not due to the nature or the purpose of the enactment of the statute, Your Honor. If you look at 4248, its sister statute, 4246, there are other civil detainees or prisoners who are detained without having been a conviction. So the statute 4248 doesn't even require that a person be convicted in order to be determined a sexually dangerous person and subsequently committed. If we look at an analogous situation, this court, the Fourth Circuit, has determined where a person who's imprisoned escapes from that incarceration, escapes from the underlying sentence for which they're imprisoned, and then the underlying sentence is vacated or determined void, that's not a defense to the person's escape. Here is an analogous situation with Mr. Welsh. He's attempting to avoid a federal law based on... Not exactly, because he's committed a separate actionable... The escape is an offense. The escape is an offense, that's true. I see the point you're making, though. It's a derivative. The analogy, Your Honor, is that just because he's in federal custody under a criminal judgment that was later vacated should not allow him to avoid the application of other 4248 laws or civil commitment laws. I guess I just go back to a similar gloss on that question. It's very hard for me to... I can see where you could look at the facts and say, on this record, it doesn't outweigh it. The public risk doesn't outweigh it. I don't understand why it isn't a factor that the district court can at least take into consideration in weighing the equities. Which doesn't take what into consideration? The fact that the judgment of conviction was vacated. And you're saying that's just not relevant in the procedural posture where we are? Certainly the court recognized that it considered the underlying criminal judgment in determining whether in the 4248 case, because without the underlying criminal judgment the 4248 case would have never existed. That's what brought him into federal custody to begin with. Before your time expires, what was your response to whether or not 4248G is applicable here? I think Judge Diaz asked you about that. You lost me. 4242... 4248G says, under the Act, Congress requires the release of persons in federal custody whose federal charges have been dismissed for reasons not related to the mental condition of the person. Even if those persons were otherwise considered to be sexually dangerous. They shall be released. Well, again, we would contend... And again, we didn't argue this at the district court. And she doesn't argue that here, but... I should say Mr. Welsh... He wasn't preserved. You're saying he wasn't preserved. That's true. And that was our argument in the footnotes. Substantively, the answer to Judge Thacker's question, assuming that it... I mean, the fact that it exists has to be something to consider in equity. We would argue that 48G applies only prior to the certification being filed. Because once the... Definitely prior to the court ordering him civilly committed under the statute. Because once the court imposes a civil commitment order, the BOP or the Attorney General has no authority to release him. How could it be before the civil commitment when it says, even if those persons were otherwise considered to be sexually dangerous persons? That's what civil commitment is. Considered by the entity, the Bureau of Prisons, the Attorney General. If Congress meant it otherwise, it would have said, even if the person's been determined by the district court to be a sexually dangerous person under 4248D. And again, the default under 4248 is to release people to the state if they're willing to take a custody of the person for treatment purposes. Here, that's what 4248G was implemented to show. If there's no other questions, I'll rest. Thank you for your time. Mr. Lockridge suggested that Mr. Welch's vacated judgment has nothing at all to do with the civil commitment. Well, can we start with my recollection? If I'm incorrect, please tell me.  of being sexually dangerous. Sexual activity for the past 18 years, I believe you said? Hands-on offenses, Your Honor. What do we do with the findings that the district court relied on about frequent inappropriate sexual conduct during its commitment? My understanding, Your Honor, is that all of those were consensual and with other adults. And while they were a violation of the Bureau of Prisons policies and regulations, they were not what would ordinarily be considered a sexual offense. Or the psychological report that suggested the actuarial material is quite correct that there appears to be a point at which people age out. But the psychological report that was completed as part of his treatment suggested that he would have serious difficulty refraining from acts of sexual violence. As we mentioned in our brief, for more than a year, Mr. Welch has not participated in the CTP program at Butner. That has been on advice of counsel. This court in Antone at footnote 12 recognized that while active litigation is pending, participation in the CTP program is particularly complex. There is no psychotherapist patient privilege and the government frequently introduces evidence from that program into litigation. I was trying to understand why counsel would encourage a detainee not to participate. That's correct. And this court has addressed it in Antone for the court's reference. I'd like to go back briefly to Comstock where the court explained that Congress only has authority to legislate for civil commitment because of the custody status of the individuals reached by section 4248. And this court reaffirmed in Joshua that that custody must indeed be legal or lawful, that it is not mere physical custody. So as Mr. Lockridge acknowledged in his argument, without this conviction from the District of Oregon, Mr. Welch would have been similarly situated to someone standing on the street. And Solicitor General Kagan, she was the Solicitor General at that time, confirmed to the Supreme Court that if Congress is looking at someone on the street, they have no authority to legislate against that person. The government's ideas about that person's sexual dangerousness or anything else related to civil commitment are completely irrelevant. And at the time that Mr. Welch was civilly committed, we now know from Nichols that he should have been in the same position as that man on the street. And the government's views of his purported sexual dangerousness simply are irrelevant. I also wanted to confirm that Mr. Welch will be subject to SORNA's requirements for the rest of his life. He doesn't have other supervised release because his conviction was vacated. But he is still subject to SORNA. And he's also subject to the ability to petition for release every six months. That is true. But again, because he should have been similarly situated to someone on the street, he should not bear the burden. I understand. I just wanted to make the point about the indefiniteness. But I certainly take your point. And I think that also goes to the government's interest in finality. 4248's civil commitment scheme necessarily presumes that these decisions will be up for review fairly frequently, either on motion of the government or on motion of the respondent. And that, I think, undercuts the government's interest in the absolute finality of this civil commitment judgment. And also, as I mentioned before, most 60B5 cases are dealing with civil cases and money judgments. Here we have a liberty interest. That's something this court, to my knowledge, has never considered, either in the 4248 context or in the 4246 context. So I think it's very important to recognize that where exceptional circumstances have been found in the context of cases involving only financial judgments, that this is something of a totally different kind. And your position with respect to the standard of review? Our understanding is that Rule 60B4 claims are reviewed de novo and the other two are reviewed for abuse of discretion. I also wanted to mention briefly with respect to 4248G, this is a portion of the statute that, to my knowledge, has never been litigated and it was located after we filed our motion in the district court. There is no mention in that statute that it applies only pre-commitment. And it appears from the text of the statute actually to apply after certification by its terms. So we believe that it does apply. But you didn't present that as a grounds for relief to the district court. We did not. The district court would have to consider that in the first instance. That's correct. But we cited in our brief merely to show, again, in another way, how important Congress believed the legal custody status was. And that if all those charges had been dismissed prior to had been dismissed, then the commitment could not stand. So that's why we cited it in our briefs. Thank you. I'd also like to briefly return to your Honor's question about Rivers V. Roadway Express. I apologize for not having the response handy during my initial remarks. But the question was, Section 1981 and whether it covered discriminatory contract termination. And the Supreme Court had later decided a case called Patterson that changed the way that statute had previously been interpreted. And the Supreme Court said that it was correct for courts to apply that new interpretation. It said that a judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction. And therefore, that interpretation provides the baseline for its conclusion. That's the authoritative interpretation of the phrase in the statute. Your Honor, because Mr. Welsh has been in prison for more than seven years as a result of conduct that was not a crime, we believe that under any standard under 60B4, 60B5's two clauses which we've raised, and 60B6, he is entitled to relief and this court should reverse the district court's judgment. We don't believe remand is appropriate because the district court issued several alternative holdings and explained how it would have addressed the case if this court disagreed with it in certain respects. So we believe that the appropriate opinion from this court would reverse the district court's judgment. Thank you. Thank you very much. We will adjourn court, sign and die. We will come down and brief counsel and then we'll return to the bench and we'll take questions from the audience. Not about any of the cases. This honorable court stays adjourned. The May die. God save the United States and this honorable court.
judges: Allyson K. Duncan, Albert Diaz, Stephanie D. Thacker